THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR. 
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 W.M. Blackmon and Linda K. Blackmon, Respondents,
 
 
 

v.

 
 
 
 Luciano Lira, Appellant.
 
 
 

Appeal From Sumter County
 Jack D. Howle, Special Referee

Unpublished Opinion No. 2004-UP-595
Heard October 12, 2004  Filed November 30, 2004

AFFIRMED

 
 
 
 Warren S. Curtis, of Sumter, for Appellant.
 William W. Wheeler, III, and Jacob H. Jennings,  both of Bishopville, for Respondents.
 
 
 

PER CURIAM:  W.M. Blackmon and Linda K. Blackmon brought this action for ejectment against Luciano Lira.  Lira appeals the special referees order finding that Lira did not own the property at issue and was not entitled to compensation for improvements he made to the property.   We affirm.
FACTS
The land on which Lira is living is a 57.5-acre tract conveyed by Linda Blackmons father, Watt Keels, to Mrs. Blackmon and her first husband, Lloyd Mixon.  Mixon and Mrs. Blackmon owned the property as tenants in common for life and upon the death of either of them, to the survivor in fee simple.[1]  Prior to 1994, Lira began working for Mixon.  In July 1994, Mixon permitted Lira to move into a mobile home on the land.  Mixon died on January 26, 2000.  Mrs. Blackmon later married W.M. Blackmon and the property at issue was deeded to the Blackmons by survivorship deed.  Mr. Blackmon died during the course of this litigation; therefore, Mrs. Blackmon is the sole owner of the property.
The Blackmons commenced this action in the Sumter County Magistrates Court by filing an affidavit for ejectment of Lira.  On October 31, 2001, an order and rule to vacate or show cause was issued ordering Lira to vacate immediately or show cause within ten days why he should not be ejected.  On November 8, 2001, Lira filed a return to the rule in which he alleged his ownership of the property as a defense to the ejectment.  The parties consented to transfer the case to the Court of Common Pleas.  After the transfer, Lira filed an answer and counterclaim in which he argued he is the owner of the property by virtue of a grant from Mixon prior to his death.  In the alternative, Lira alleged that if he is not the true owner, he is due compensation for improvements he made to the premises.  The Blackmons replied to Liras counterclaim, denying Liras ownership interest in the property or any entitlement to compensation for improvements.
On March 18, 2002, the case was referred to a special referee.  After the August 19, 2002 trial, the special referee took the matter under advisement and allowed both parties to submit memoranda outlining their positions.  In his brief, Lira argued each of his claims and raised the issue of promissory estoppel based on a recent case.  On December 23, 2002, the special referee entered his order ruling in favor of the Blackmons on both the title and ejectment issues and ruling against Lira on the issues raised in his counterclaim.  Specifically, the special referee found Lira did not meet his burden of proving a parol gift by clear and convincing evidence.  Additionally, the special referee held Lira was not entitled to relief under the Betterments Statute[2] because he failed to prove his good faith belief in his title to the property and failed to prove any damages that would be recoverable.  Finally, the special referee concluded Lira failed to prove any damages were recoverable under the theory of quantum meruit given there was no evidence the work was performed by Lira for the benefit of the owners. 
Subsequently, Lira filed motions for a new trial and a stay of the effect of the order.  The special referee denied both of these motions.  In his appeal, Lira moved for this court to grant a stay so that he could remain on the property during the appeal.  We remanded the matter to the special referee to set an appeal bond.  Lira appeals.
STANDARD OF REVIEW
In an appeal from the final judgment of a special referee, the reviewing court has the same scope of review as if the appeal had been from the circuit court without a jury to the Supreme Court.  Tiger, Inc. v. Fisher Agro, Inc., 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989) (discussing equity appeal direct to Supreme Court). 
This case involves both actions at law and at equity.  A case with legal and equitable issues presents a divided scope of review.  When legal and equitable actions are maintained in one suit, each retains its own identity as legal or equitable for purposes of the applicable standard of review on appeal.  Kuznik v. Bees Ferry Assocs., 342 S.C. 579, 589, 538 S.E.2d 15, 20 (Ct. App. 2000) (citations omitted).  
Parol transfer of title, promissory estoppel, and quantum meruit are all equitable causes of action.  See Columbia Wholesale Co. v. Scudder May N.V., 312 S.C. 259, 261-62, 440 S.E.2d 129, 130-31 (1994) (recognizing a proceeding in quantum meruit is equitable.); Knight v. Stroud, 212 S.C. 39, 42-43, 46 S.E.2d 169, 170 (1948) (holding in an action for possession of real estate, if a parol gift is claimed, together with improvements made with the donors knowledge, the issue is equitable); Satcher v. Satcher, 351 S.C. 477, 482, 570 S.E.2d 535, 538 (Ct. App. 2002) (stating action seeking specific performance of title in property based on parol gift and promissory estoppel sounds in equity).  In an action sounding in equity, tried by the judge alone, the appellate court may review the record and make findings based on its own view of the evidence.  Townes Assocs. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).  However, this court is not required to disregard the findings of the special referee who saw and heard the witnesses and was in a better position to judge their credibility.  Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct. App. 1996).
In contrast, the issues involving the extinguishment of a property interest and compensation under the Betterments Statute are actions at law.  See Wigfall v. Fobbs, 295 S.C. 59, 60, 367 S.E.2d 156, 157 (1988) (holding a determination of title is legal in nature); Hammond v. Lindsay, 277 S.C. 182, 184, 284 S.E.2d 581, 582 (1981) (The construction of a clear and unambiguous deed is a question of law for the court.); Rogers v. Nation, 284 S.C. 330, 333, 326 S.E.2d 182, 183 (Ct. App. 1985) (An action for ejectment is one at law.).  In an action at law referred to a special referee with direct appeal to the Supreme Court or Court of Appeals, the appellate court will correct errors of law, but must affirm the special referees factual findings unless there is no evidence to support the findings.  Crary v. Djebelli, 329 S.C. 385, 388, 496 S.E.2d 21, 23 (1998); King v. PYA/Monarch, Inc., 317 S.C. 385, 388-89, 453 S.E.2d 885, 888 (1995).   
DISCUSSION

I.       Parol Transfer of Title
Lira argues the special referee erred in holding that no parol transfer of title occurred from Mixon to Lira.  We disagree.
A parol gift of land can be established only by clear and convincing testimony, and unless possession of the land is delivered or taken in pursuance of the gift thereby taking such parol gift out of the statute of frauds, evidence of the parol gift is inadmissible.  Knight v. Stroud, 214 S.C. 437, 441, 53 S.E.2d 72, 73 (1949).  Knight instructs that in order to take a parol gift of land out of the statute of frauds possession must be taken in pursuance of the gift, and as a further condition to the consummation of the equitable right and title, the donee must have made improvements of a valuable and permanent character, induced thereto by the promise to give the land.  Id. at 441-42, 53 S.E.2d at 74.  Furthermore, mere possession and the making of some improvements do not dispose of the requirement of showing distinct proof that a gift actually occurred.  Id. at 442, 53 S.E.2d at 74.
Lira has not produced clear and convincing evidence of a parol gift.  It is not clear from the record Lira took possession in pursuance of a gift, or the improvements were induced by a promise to give the land.  Lira never testified that he moved onto the land because of a promise by Mixon to give him the land.  In fact, he gave no reason at all as to why he moved onto the land.  Although Lira testified as to the improvements he made on the land,[3] he did not testify that he made any improvements due to a gift.  While there was testimony offered from Liras friend, Santos Alvarado, that he witnessed Lira give Mixon $5,000 in cash and overheard Mixon telling Lira dont worry about [the money], you know, the land [is going to] be yours, there is no testimony that Lira relied on this promise.  Moreover, there is no documentation in the record to substantiate Liras claim of a parol sale of land.  The only evidence is Liras assertion that he paid Mixon large sums of money in cash, amounting to approximately $25,000.00.  Furthermore, as the special referee found and Lira acknowledged at oral argument, the Blackmons had title to the mobile home, which was the most significant improvement relied upon by Lira.  Lira also lived rent-free and did not pay the taxes on the property.
Additionally, there is evidence in the record tending to show Lira actually did not believe he owned the land.  In response to a letter Lira received ordering him to vacate the property, Lira wrote a letter asking for an extension of time in which to vacate.  He did not assert his ownership anywhere in the letter.  Instead, he asked only for an extension to vacate.  During this same time, Lira also inquired about the new owner of the property apparently in an effort to acquire the land.  For the foregoing reasons, we find the special referee properly found the evidence did not support a parol transfer of title.  
II.      Promissory Estoppel
Lira argues the special referee erred in finding he did not establish title to the property under the doctrine of promissory estoppel.[4]  We disagree.
One may transfer title to real property pursuant to the doctrine of promissory estoppel.  Satcher v. Satcher, 351 S.C. 477, 483-84, 570 S.E.2d 535, 538-39 (Ct. App. 2002).  In order to prove title under promissory estoppel, the following elements must be met:

 (1)   The presence of a promise unambiguous in its terms.
 (2)   Reasonable reliance upon the promise by the party to whom the promise is made. 
 (3)   The reliance is expected and foreseeable by the party who makes the promise.
 (4)   The party to whom the promise is made must sustain injury in reliance on the promise.

Id. at 483-84, 570 S.E.2d at 538.  Each element must be proven by clear, cogent, and convincing evidence.  Id. at 483, 570 S.E.2d at 538.
We find the evidence presented does not support the transfer of title by promissory estoppel.  As noted above, the only testimony referring to a promise by Mixon was from Liras friend, Santos Alvarado, who stated he heard Mixon tell Lira the land would be his.  Even if this was enough evidence to support a promise, it does not show an unambiguous promise.  There was no evidence presented as to the amount of land being promised, or any specific description of exactly what part of the land Lira would receive.  
We also find the evidence insufficient in proving reasonable reliance upon the promise.  Lira testified he expended $25,000 in making improvements on the property, such as dredging the pond, fixing a road, and planting trees.  Lira further alleged he paid approximately $25,000 in cash to Mixon for purchase of the property; however, the record is devoid of any testimony by Lira that he paid Mixon this amount.  Although Lira claimed these expenditures, he did not put forth any documentation or receipts.  Accordingly, we find the special referee correctly found that Lira did not establish his ownership to the property based on the doctrine of promissory estoppel.
III.    Property Interest Extinguished
Lira asserts the special referee erred in holding that the death of Mixon extinguished any interest Lira had in the subject property.  We disagree.
Mrs. Blackmons father deeded the property to Mixon and Mrs. Blackmon as tenants in common, for and during their joint lives, and upon the death of either of them, then to the survivor of them, his or her heirs and assigns, forever, in fee simple, together with every contingent remainder and right of reversion.  
In construing a deed it is elementary that the cardinal rule of construction is to ascertain and effectuate the intention of the parties, unless that intention contravenes some well settled rule of law or public policy.  Sandy Island Corp. v. T.S. Ragsdale, 246 S.C. 414, 420, 143 S.E.2d 803, 806 (1965).  A tenancy in common with benefit of survivorship is a case which may exist, without being a joint tenancy, because survivorship is not the only characteristic of a joint tenancy.  Davis v. Davis, 223 S.C. 182, 186, 75 S.E.2d 46, 48 (1953) (citation omitted).  While the right of survivorship is not an incident to an estate in common, it may be annexed thereto if the parties so desire.  Id. at 187, 75 S.E.2d at 48 (citation omitted).  Davis further provides:

 If the intention was to create a tenancy in common for life, with cross remainders for life, with remainder in fee to the ultimate survivor, a joint tenancy would not accomplish the purpose because the right of survivorship may be defeated by a conveyance by any joint tenancy but the vested cross-remainders and, in general, the contingent ultimate remainders are indestructible.

Id. at 187, 75 S.E.2d at 48 (citation omitted).  
The language in the deed conveying the property to Mixon and Mrs. Blackmon created a life estate in both of them, with the fee interest going to the surviving tenant.  Thus, Mixon and Mrs. Blackmon were contingent remaindermen in the property, with the contingency being survival.  Because Mixon predeceased Mrs. Blackmon, his property interest was extinguished at the time of his death.  Therefore, the special referee properly held the most Mixon could have conveyed to Lira was a life estate that terminated at Mixons death.
IV.    Quantum Meruit
As an alternative argument to asserting title, Lira claims the special referee erred in failing to compensate him for the value of improvements he made pursuant to the doctrine of quantum meruit.  We disagree.
The equitable doctrine of quantum meruit allows an aggrieved party to recover for unjust enrichment. Columbia Wholesale Co. v. Scudder May N.V., 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994).  The following elements are necessary to prevail on this claim:

 (1)   benefit conferred by plaintiff upon the defendant;
 (2)   realization of that benefit by the defendant; and
 (3)   retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value.

Myrtle Beach Hosp., Inc. v. City of Myrtle Beach, 341 S.C. 1, 8-9, 532 S.E.2d 868, 872 (2000).[5] 
The measure of recovery in a quantum meruit action is the amount the court considers the defendant has been unjustly enriched at the expense of the plaintiff.  Stringer Oil Co. v. BoBo, 320 S.C. 369, 373, 465 S.E.2d 366, 369 (Ct. App. 1995).  Based on this measure of recovery set forth in Stringer, we find Lira failed to put forth evidence of his damages or any enrichment to the Blackmons because of his changes to the property.  The improvements were not for the benefit of the Blackmons.  For example, Lira testified he repaired the road for his own benefit.  Mrs. Blackmon also testified some of the changes Lira made to the property were not to her liking and would have to be removed.  Furthermore, Lira failed to present evidence establishing any increase in value to the property based on his improvements.  Nor did he submit documentation verifying that he expended $25,000 for the improvements.  Thus, we find the special referee correctly held Lira could not recover damages under either quantum meruit standard.
V.      Betterments Statute
Lira asserts the special referee erred in finding that he failed to establish any right to be compensated for the reasonable value of the improvements to the property pursuant to the Betterments Statute. 
The primary code section of the Betterments Statute provides:

 After final judgment in favor of the plaintiff in an action to recover lands and tenements, if the defendant has purchased the lands and tenements recovered in such action or taken a lease thereof or those under whom he holds have purchased a title to such lands and tenements or taken a lease thereof, supposing at the time of such purchase such title to be good in fee or such lease to convey and secure the title and interest therein expressed, such defendant shall be entitled to recover of the plaintiff in such action the full value of all improvements made upon such land by such defendant or those under whom he claims, in the manner provided in this chapter.

S.C. Code Ann. § 27-27-10 (1991).  Based on this statutory language, the individual claiming the betterments must demonstrate a belief that his title is good in fee.  Reaves v. Stone, 231 S.C. 628, 633, 99 S.E.2d 729, 731 (1957).  
For Lira to have prevailed on this claim, he was required to show his honest belief that he secured good title to the property and was the rightful owner.  We find the special referee correctly determined Lira did not demonstrate such good faith belief.  Not only did Lira fail to testify regarding his belief that he owned the land, but there was evidence in the record that directly contradicted any such belief.  The letter in which Lira requested an extension of time to vacate, instead of asserting ownership, was in direct contravention of any belief of ownership.  Lira also inquired about the new owner of the property in order that he could make a deal to procure the property.  Furthermore, the record reflects Lira did not pay to live on the land and he did not pay taxes or insurance on the property.
Even assuming Lira established a good faith belief that he was the rightful owner of the property, he failed to prove damages under the Betterments Statute.  The measure of recovery under the statute is the difference in the fair market value of the property before the improvements and after the improvements.  Butler v. Lindsey, 293 S.C. 466, 475, 361 S.E.2d 621, 626 (Ct. App. 1987).  Section 27-27-20 provides:

 The sum which such land shall be found at the time of the rendition of such judgment to be worth more, in consequence of improvements so made, than it would have been had no such improvements or betterments been made shall be deemed to be the value of such improvements or betterments.

S.C. Code Ann. § 27-27-20 (1991).
Therefore, to recover under the Betterments Statute, Lira was required to show the value of his improvements and present evidence from which a finder of fact could determine the value of the land with the improvements and without the improvements.  Hall v. Boatwright, 58 S.C. 544, 547, 36 S.E. 1001, 1002 (1900); see Dunham v. Davis, 232 S.C. 175, 183, 101 S.E.2d 278, 282 (1957) (The increase or enhancement in value in consequence of the improvements is the measure of the equitable compensation.); Howard v. Kirton, 144 S.C. 89, 98, 147 S.E. 39, 42 (1928) (interpreting the Betterments Statute and stating, [t]he full value, therefore, does not mean the cost of such improvements, or the value thereof, as of the time they were made, but their value at the time of the final judgment in ejectment).  The special referee properly denied recovery under the Betterments Statute.  Although Lira testified he expended $25,000 in making improvements, he failed to present any documentation of these expenditures.  He also failed to offer evidence regarding the value of the land before and after the improvements.  As a result, his claim for recovery under the Betterments Statute must fail.
CONCLUSION
We find the special referee properly found that Lira did not have title to the subject property and was not entitled to be compensated for the improvements to the property.                                                                
Accordingly, the decision of the special referee is 
AFFIRMED.
STILWELL, BEATTY, and SHORT, JJ., concur.

[1]   The deed provides in pertinent part:

 TO HAVE AND TO HOLD, all and singular the said Premises before mentioned unto the said
 Lloyd B. Mixon, Jr. and Linda Keels Mixon 
 as tenants in common, for and during their joint lives and upon the death of either of them, then to the survivor of them, his or her heirs and assigns, forever, in fee simple, together with every contingent remainder and right of reversion, and I do hereby bind myself and my Heirs, Executors and Administrators, to warrant and forever defend all and singular the said Premises unto the said Lloyd B. Mixon, Jr. and Linda Keels Mixon as hereinabove provided from and against myself and my Heirs and any person or persons whomsoever lawfully claiming or to claim the same, or any part thereof. 

[2]   The Betterments Statute is codified at South Carolina Code of Laws sections 27-27-10 to -100 (1991).
[3]   Lira claimed he made the following improvements to the property:  (1) dredging a pond; (2) building a retaining wall around the pond; (3) dragging and paving a roadway into the property; (4) cutting a driveway into the property and paving it; (5) placing a mobile home upon the property and permanently anchoring it to the property; and (6) planting trees and shrubs. 
[4]  Blackmon asserts this issue is not preserved for our review because Lira did not raise it in his pleadings.  We find, however, that Lira timely raised this argument.  In Satcher v. Satcher, 351 S.C. 477, 482-84, 570 S.E.2d 535, 538-39 (Ct. App. 2002), this court extended the doctrine of promissory estoppel to apply to cases where real property is claimed.  This decision was issued on August 19, 2002, the same day as the hearing before the special referee.  Subsequently, Lira raised the issue regarding promissory estoppel in his post-trial brief to the special referee.  He again raised the issue in his Rule 59(e) motion, alleging that the special referee failed to consider this claim.  Because Lira raised this issue in a timely manner with respect to the issuance of Satcher, we choose to address his argument.  Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (recognizing that to preserve an issue for appellate review, the issue must be (1) raised to and ruled upon by the trial court, (2) by the appellant, (3) in a timely manner, and (4) with sufficient specificity). 
[5]  We note the special referee erred in using the quantum meruit standard set forth in Muller v. Myrtle Beach Golf & Yacht Club, 303 S.C. 137, 143, 399 S.E.2d 430, 434 (Ct. App. 1990) (listing the following four elements of quantum meruit as follows:  (1) valuable services or materials were furnished; (2) for the person sought to be charged; (3) the services and materials were accepted, used, and enjoyed by the person sought to be charged; and (4) under such circumstances as reasonably notified the person receiving the services or materials that the plaintiff, in furnishing such services or materials, expected to be paid for them by the person sought to be charged), overruled by Myrtle Beach Hosp., Inc. v. City of Myrtle Beach, 341 S.C. 1, 8-9, 532 S.E.2d 868, 872 (2000).  The error, however, was not raised by Lira.  Thus, it is the law of the case.  See Charleston Lumber Co. v. Miller Housing Corp., 338 S.C. 171, 175, 525 S.E.2d 869, 871 (2000) (stating an unappealed ruling is the law of the case).  In any event, it is of no consequence due to our finding in agreement with the special referee that Lira failed to prove his damages.