2396

STRINGER OIL CO., INC., Respondent v.
Alton BOBO, d/b/a/ Powdersville Exxon Station, Appellant.

(465 S.E. (2d) 366)

Court of Appeals

---

370

*S. Jahue Moore,* of *Kirkland, Wilson, Moore, Allen, Deneen & Taylor,* West Columbia, *for appellant.*

*Barry W. Knobel,* Anderson, *for respondent.*

Heard Sept. 13, 1995.

Decided Oct. 16, 1995; Reh. Den. Jan. 9, 1996.

HEARN, Judge:

This is an appeal following remand. *Stringer Oil Co., Inc. v. Bobo,* 94-UP-196 (S.C. Ct. App. filed July 28, 1994). Alton Bobo appeals the amount the master found Stringer Oil Company was entitled to recover from Bobo. We affirm as modified.

Bobo owns and operates the Powdersville Exxon Station. In 1986, Stringer, a wholesale distributor for gasoline and related products, began supplying Bobo with Exxon products. In 1987, Bobo changed the design of the station. He leveled the old station and constructed a more modern convenience store on the same site. He also dug up and removed the existing underground storage tanks. Stringer installed new underground storage tanks, gasoline dispensers, signs, and a canopy at a cost of $106,691.54, based on Bobo's assurance that he would continue to purchase gasoline products from Stringer.

Between July 1987 and August 1988, Bobo purchased gasoline exclusively from Stringer. In the fall of 1988, however, Bobo began buying gasoline from a different Exxon distributor.

In September of 1991 Stringer sued Bobo, alleging breach of an alleged exclusive supply agreement and conversion of the improvements Stringer installed on Bobo's property. Stringer also sought recovery based upon *quantum meruit.*[1] Bobo answered and alleged Stringer had engaged in discriminatory pricing, had breached the contract, and had breached a fiduciary duty it owed to Bobo.

---

[1] Apparently no written agreement existed between the parties.

The matter was referred to the master in equity for final judgment, with any appeal directly to the Supreme Court. Following a hearing, the master found there was an oral contract between the parties, that Bobo had breached the contract, and that Stringer was entitled to recovery in *quantum meruit* for the value of the improvements to Bobo's property. The master awarded Stringer $115,162.72 in damages, including prejudgment interest and incidental costs. The master later adjusted the award to allow Bobo a credit of $7,200, the amount of a rebate from Exxon to Stringer.

Bobo appealed the judgment. This Court assumed, without deciding, the master erred in finding a contract existed, and affirmed the judgment based upon *quantum meruit*.

The Court, however, reversed the amount of damages. The Court noted the master awarded damages for the value of Stringer's investment in the station, prejudgment interest, and incidental costs Stringer incurred for maintenance of taxes and insurance on the equipment. The Court also noted the master deducted Stringer's return on its investment and Bobo's costs for reinstalling a canopy Stringer had improperly constructed. The Court held the award of $33,320.14 for prejudgment interest was error, since Stringer's claim based upon *quantum meruit* was not liquidated at the time Stringer brought the action. The Court held Stringer was "entitled to recover only to the extent its investment unjustly enriched Bobo to Stringer's detriment." The Court remanded to the master "for determination of the amount of the judgment."

Upon remand, the master again calculated Stringer's damages based upon Stringer's initial investment, awarding after appropriate credits, $74,642.58. This was error. The prior opinion issued by this Court clearly directed the master to determine damages based upon "the extent to which [Stringer's] investment unjustly enriched Bobo to Stringer's detriment." Rather than employing that measure of damages, however, the master awarded damages to Stringer based solely on Stringer's initial investment, less the prejudgment interest previously disapproved by this Court.

If Bobo is required to pay $74,642.58, but the property is worth much less than that to him, he will be forced to suffer a major loss. While it is true that Stringer has made a substantial investment in Bobo's property, Stringer should not be per-

mitted to shift that loss to Bobo unless it proved Bobo breached their contract. The question of whether Bobo breached his contract with Stringer, however, is not one that we must decide because it is not before us.

In an action in quasi-contract, the measure of recovery is the extent of the duty or obligation imposed by law, and is expressed by the amount which the court considers the defendant has been unjustly enriched at the expense of the plaintiff. *United States Rubber Products, Inc. v. Batesburg*, 183 S.C. 49, 190 S.E. 120 (1937). See also *Brumby v. Smith & Plaster Co. of Ga.*, 123 Ga. App. 443, 181 S.E. (2d) 303 (1971) ("value" for purposes of the *quantum meruit* remedy means value to the owner rather than cost to the workman of producing the result); *Remediation Services, Inc. v. Georgia-Pacific Corp.*, 209 Ga. App. 427, 433 S.E. (2d) 631 (1993) (the "reasonable value" which plaintiff may recover in *quantum meruit* is not the value of labor but the value of the benefit resulting therefrom); *Bales v. Evans*, 94 N.C. App. 179, 379 S.E. (2d) 698 (1989) (measure of recovery on *quantum meruit* is reasonable value of services that are accepted and that benefit the defendant).

The appropriate standard for calculating *quantum meruit* recovery is stated in 66 Am. Jur. (2d), Restitution and Implied Contracts, § 166, p. 1096, n. 85:

> If the value of what was received and what was lost were always equal, there would be no substantial problem as to the amount of recovery, since actions of restitution are not punitive. In fact, however, the *plaintiff frequently has lost more than the defendant has gained,* and sometimes the defendant has gained more than the plaintiff has lost. In such cases the measure of restitution is determined with reference to the tortiousness of the defendant's conduct or the negligence or other fault of one or both of the parties in creating the situation giving rise to the right to restitution. If the defendant was tortious in his acquisition of the benefit he is required to pay for what the other has lost although that is more than the recipient benefited. If he was consciously tortious in acquiring the benefit he is also deprived of any profit derived from his subsequent dealing with it. *If he was no more at fault than the claimant, he is not required to pay for the losses in*

*excess of benefit received by him* and he is permitted to retain gains which result from his dealing with the property. (Emphasis added.)

The only competent evidence offered upon remand as to the extent Bobo has been unjustly enriched to Stringer's detriment came from Bobo himself. Bobo testified the value of the improvements to him at the time the parties ceased doing business together was $40,000.00. As the owner of the station, he was competent to present evidence on this issue. *Hough v. Hough,* 312 S.C. 344, 440 S.E. (2d) 387 (Ct. App. 1994); *Bailey v. Bailey,* 293 S.C. 451, 361 S.E. (2d) 348 (Ct. App. 1987); *Rogers v. Rogers,* 280 S.C. 205, 311 S.E. (2d) 743 (Ct. App. 1984). Moreover, his testimony as to valuation and unjust enrichment to him was not contradicted by Stringer. Instead, Stringer continued to maintain its erroneous position that Stringer was entitled to recover from Bobo based upon the cost of Stringer's investment. It is basic hornbook law that although the plaintiff's costs of performance might represent some evidence of value, they do not represent a recoverable item of restitution themselves. Dobbs, Dan B., *Remedies* § 45 at 261.

Since this is an equitable matter, this Court has jurisdiction to find facts in accordance with it own view of the preponderance of the evidence. *Columbia Wholesale Co. v. Scudder May N.V.,* 312 S.C. 259, 440 S.E. (2d) 129 (1994). Therefore, we find the value of the improvements made by Stringer to Bobo as of the time the parties ceased doing business together is $40,000.00. The judgment below is hereby modified consistent with this opinion.

Affirmed as modified.

CURETON and GOOLSBY, JJ., concur.